## SUBURBAN GARDEN FARM HOMES CORPORATION *v.* T. HOWARD DUCKETT

[No. 9, October Term, 1941.]

*Decided November 5th, 1941.*

The cause was argued before BOND, C. J., SLOAN, JOHNSON, DELAPLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.

*Helen Elizabeth Brown* and *R. Palmer Ingram* for the appellant.

*T. Howard Duckett,* with whom was *James C. Mitchell* on the brief, for the appellee.

JOHNSON, J., delivered the opinion of the Court.

This is an appeal from an order and decree of the Circuit Court for Charles County, in Equity, overruling exceptions filed by appellant to a mortgagee's sale and finally ratifying the sale.

The mortgage under which the property was sold bears date of June 24th, 1939, from appellant to George W. Adams, and was given to secure payment of $6300, evidenced by three promissory notes of even date, each for the sum of $2100, payable in one, two, and three years, respectively, with interest at six per cent payable semi-annually. It is recited therein that the property is the same as described in a deed from the mortgagee and his wife to the mortgagor, bearing even date of the mortgage, and reference is made to the deed for a "more complete description" of the property conveyed thereby. It contained the usual power of sale, and provided that in case "default be made in payment of said money or the interest thereon to accrue, or any part of either one of them, at the time limited for the payment of the same, or in any agreement, covenant or condition of this Mortgage, then the entire mortgage debt shall be deemed due and demandable; and it shall be lawful for the said party of the second part, his heirs and assigns, or T. Howard Duckett their attorney, or agent, at any time after such default, to sell the property hereby mortgaged or so much thereof as may be necessary to satisfy and pay said debt, interest and all costs incurred in making such sale, and to grant and convey the said property to the purchaser or purchasers thereof, his, her, or their heirs or assigns and which sale shall be made in manner following, viz: upon giving twenty day's notice of the time, place, manner and terms of sale in some newspaper printed in Charles County, Maryland, which time, place, manner and terms of sale shall be fixed by the party or parties selling."

The mortgage also contained a covenant that "the party of the second part agrees upon request of the party of the first part, its successors or assigns, to release from the effect and operation of this mortgage at the expense of the party of the first part, any of the property hereby conveyed, at the rate of Twelve Dollars ($12.00) per acre as to all property fronting on any highway, and at the rate of Eight Dollars ($8.00) per acre for any property not fronting on any highway, which payments the party of the second part, his heirs or assigns, agree to accept one-half in cash and one-half by way of a mortgage back on the property so released, with interest at the rate six (6) per centum payable in one, two and three years equally; all of which payments shall apply on the principal debt and shall be credited on the note next maturing."

The sale was made by T. Howard Duckett, Esquire, the attorney named in the mortgage, to sell the property in the event of default on the part of mortgagor, and it is shown that payment of the principal on the first of the above notes secured by the mortgage was not made, and that the semi-annual interest which was due on December 24th, 1939, was not paid in full, nor was any part of the interest paid which fell due on June 24th, 1940. It further appears that foreclosure proceedings were instituted by Mr. Duckett on August 7th, 1940, and the property was sold at public auction at the Court House at La Plata on September 3rd, 1940 at three o'clock P. M. to Claude F. Clarke, the highest bidder therefor, at and for the sum of $8500. The terms of the sale were all cash within five days thereafter and a deposit of $1000 was required of the purchaser at the time of the sale. It further appears that prior to the sale the attorney named in the mortgage complied with the requirements therein of giving twenty days' notice of the time, place, manner and terms of sale in a newspaper printed in Charles County, Maryland; that the advertisement as to the date, time and place of sale corresponded with the report of sale relating thereto. There is no dispute that the head-

line of the advertisement read "Attorney's Sale of Valuable Real Estate near Waldorf, Maryland"; that in the body of the advertisement there is contained a description of the property in accordance with the deed to appellant therefor; and reference to that deed is made for "a more complete description of the property," excepting a lot of about two acres released from said mortgage by release duly recorded among the Land Records of Charles County.

In that advertisement, it is also stated:

"This property is located near the Town of Waldorf and consists of approximately 1200 acres, improved by a substantial frame dwelling. Full particulars will be furnished by the undersigned or his attorney.

> "T. Howard Duckett, Attorney to sell named in said mortgage.
> "James C. Mitchell, Attorney,
> "La Plata, Maryland."

Before the expiration of the order *nisi* published on the report of sale, and prior to final ratification, the mortgagor excepted to the sale upon the grounds, (1) that the mortgagee refused to execute a release for a subdivision of the premises in accordance with the covenant of the mortgage; (2) because of the inadequacy of price at which the property was sold; and (3) for insufficiency of the advertisement of the property.

At a hearing upon the exceptions, testimony was taken before the chancellor who found that no facts were shown justifying him in sustaining any of them, and accordingly overruled the exceptions and ratified the sale.

We will consider the exceptions in the order above stated.

1. The first exception relates to the mortgagor's contention that the mortgagee failed and refused to observe a previously quoted covenant of the mortgage with respect to releasing properties sold by the mortgagor.

Edward J. Dougherty, of Washington, president of appellant corporation, testified that in the spring of 1940 he had sale for ten acres of the mortgaged property, for

which he was to receive $400, out of which he was to pay the amount due the mortgagee; that he wrote the mortgagee requesting him to call at the bank and release that part of the property, and was informed by Mr. Adams that he could not comply with the request, because he had pledged his mortgage as collateral to secure a note which he himself owed at the bank, and the bank would not allow him to release any property until he discharged his own obligation which the pledged mortgage secured. The witness stated that he had already done some work on a building upon the property, and when this was called to Adams' attention, the latter loaned him $300; that thereupon Adams, in a conversation, told him that he did not need the mortgage money and would not foreclose the mortgage, because it was a good investment. He further stated that he used the entire $300 loaned him by Adams to improve a building upon the ten acres he was attempting to sell. It seems that in the meantime Dougherty had decided to make application for a farm mortgage upon the ten-acre tract, and the negotiations with the bank for the $400 mortgage were called off. Dougherty further testified that he also arranged with the County Trust Company to secure a loan of $1500 on a fifty-acre parcel of the mortgage premises upon the release of the same, all of which was to be consummated after Adams had repossessed his mortgage by satisfying his personal loan of $1250, but it is not shown that the bank agreed to this until after the foreclosure proceedings; that nothing further was heard from the mortgagee until a few days before the institution of the foreclosure proceedings, at which time witness was advised that unless the indebtedness was immediately satisfied, foreclosure proceedings would be instituted, and this was done before he had opportunity to refinance the mortgage. He charges that as a result of the statements thus made to him by Adams, and on which he relied, that he was grossly misled and defrauded.

It may be conceded that the burden rested upon the exceptant to prove the charges made. An examination of the

record shows that the only evidence in support of this charge was given by Mr. Dougherty, president of exceptant, and a letter signed by the cashier of the bank May 10th, 1940, to the effect that the assistant cashier had left information for the preparation of a mortgage which would require a few days. In that letter inquiry was made as to whether Dougherty had secured a release from the mortgagee for the land referred to. It may be conceded that the County Trust Company agreed to make a mortgage loan of $400, for it is shown that before the mortgagee made a personal loan of $300 he saw the president of the bank and learned that the amount could be repaid from the loan.

Adams, the mortgagee, unequivocally denied that he had ever assigned the mortgage or was ever in a position not free to execute releases under its terms and his willingness to make an unsecured loan for three-fourths of a proposed loan from the bank is indicative of a desire on his part to aid exceptant pending negotiations for the loan, but it may be recalled that at that time a part of the first semi-annual interest had been due since December 24th, 1939, and the mortgagee by the terms of the mortgage at that time could have foreclosed the same, but instead of doing so he made a personal loan of $300. This conduct on his part makes it unreasonable to conclude that he then had a design to take any advantage of the mortgagor's position. It is shown that all the first semi-annual interest, plus $2100, the amount of the first principal note, was due June 24th, 1940, yet foreclosure proceedings were withheld until August 7th, in the same year. Under such circumstances, if we could find that Dougherty correctly quoted the mortgagee to the effect that he would not foreclose the mortgage, it could not be successfully contended by exceptant that there was any consideration to support such a promise, since appellant's contention that the mortgagee deferred payment of the $2100 note and interest on the indebtedness maturing June 24th, 1940, is not sustained by the evidence.

2. The contention that the property was sold at a grossly inadequate price is relatively free from difficulty. The law is well settled that to justify a court of equity in setting aside an adequately advertised sale of property upon this ground, facts must be shown from which the conclusion arises that the price is so insignificant as to shock the conscience of the Court. The facts must be such as to compel the conclusion that because of the inadequacy of the price, constructive fraud is implied. *Stallings v. Annapolis Savings Institution*, 167 Md. 4, 172 A. 283, and cases there cited; *Ten Hills Co. v. Ten Hills Corp.*, 176 Md. 444, 5 A. 2nd 830.

In this case the evidence is conclusive that the land in question is unimproved, save for the dwelling house located thereon and upon which appellant made some repairs; the property consists of scrub woodland and no timber of any value. Much of the land is low and swampy and only a small part of it lies on the state highway. There are three temporary roads running through the property which were constructed some years ago under direction of the Civilian Conservation Corps. As usual in cases of this character estimates of value differ widely, but valuations placed upon the property by exceptant's witnesses were of a highly speculative character while there is other testimony to the effect that land of the same class located within a reasonable distance of the property has recently been sold for as low as $3 per acre. We are impressed from a consideration of the evidence offered on behalf of exceptant that most of the witnesses based estimates not upon the sale of the land as an entirety, but on the basis of selling the property in small lots over a long period to time. One of the witnesses indicated it would require two and one-half years to dispose of this property at prices which he placed upon it. Obviously that testimony can have little weight inasmuch as it must be conceded that under the terms of the mortgage Adams was not required to sell in any such manner. Another witness placed a value of $7500 upon the property and made this estimate for a prospec-

tive purchaser who, however, failed to buy the property at that figure. Property of the character considered is simply not saleable in that section of Charles County at prices contended for by appellant, because there is no demand for the same, and all things considered, we cannot find evidence in the record that the sale of the property was made at such an inadequate price as to justify setting it aside upon that ground.

3. It has already been shown that in the notice of sale duly published, the description is even fuller than that contained in the mortgage, yet it is contended that the advertisement of the sale was insufficient. Since the advertisement locates the property at Waldorf, makes reference to the conveyance under which appellant acquired title to the property, states the acreage and improvements and the further information that full particulars will be furnished by the attorney making sale or his counsel and no contention is made as to the insufficiency of the foreclosure proceedings, we do not perceive upon what theory appellant relies on the contention that the advertisement was inadequate, unless because of a failure to advertise it in lots so far laid out and to lay out the rest of the property in lots and make sale in this manner. After acquiring title to the property, appellant had some of it platted into small acreages and lots, but since the property was conveyed to it as an entirety the mortgagee sold as an entirety. We are convinced that considering the nature of the property itself it was not incumbent upon appellee to offer it in small parcels, and an effort in this regard would not have been feasible in so far as marketing at that time was concerned, the laying out of small lots simply being a method selected by the mortgagor as a means of selling it off at high prices. The soundness of this conclusion is strengthened when it is realized that between the time of the purchase and the foreclosure sale appellant had only by this method sold two acres of the land.

There being then no requirement that the mortgagee attempt to dispose of the property in small parcels and

no showing whatever that anyone interested in the property was not sufficiently advised of the sale, nor any showing that at a resale a better price could be secured, the contention as to the insufficiency of the advertisement has not been sustained. It follows that the order of the trial court overruling the exceptions and its decree ratifying the same were correct and should be affirmed.

*Order and decree affirmed, with costs.*