## JAMES ROBERTSON MFG. CO. *vs.* LEVI L. CHAMBERS.

*Mortgage Sale Vacated for Inadequacy of Price and Insufficient Advertisement.*

The advertisement of a mortgage sale of leasehold property which was subject to a ground rent of $120 a year with the right to collect a sub-rent of $49 a year, and which was improved by a three-story brick dwelling house and a one-story office building and a stable, after describing the property by metes and bounds, added: "Ground rent $120, improved by a three-story brick dwelling." After the first publication of the advertisement, it was amended so as to read: "Subject to an annual ground rent $120, with a right to collect a sub-rent of $49." The notice of the sale was put in the window of the office building, but not on the dwelling house. The property was sold for $1,725. Upon exceptions to the ratification of the sale, the evidence was uncontradicted to the effect that the fair market value of the property was $3,500. *Held*, that on account of the inadequate price obtained, considered in connection with the failure to advertise the property so as to show the extent of the improvements, and the omission of any reference to the sub-rent in the first notice, the sale should be set aside and a re-sale ordered.

*Decided May 4th, 1910.*

Appeal from the Circuit Court of Baltimore City (HEUISLER, J.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*Richard B. Tippett* and *J. Royall Tippett,* for the appellant.

*Robert Biggs,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court of Baltimore City overruling the exceptions of the appellant, The James H. Robertson Manufacturing Company, to the ratification of the sale made by Linwood L. Clark, trustee, under a decree of that Court passed in the foreclosure proceedings instituted by the Howard Loan and Savings Association against Alvin W. Caltrider.

On the 26th day of April, 1907, Alvin W. Caltrider executed unto the Howard Loan and Savings Association of Baltimore City a mortgage upon certain property in the City of Baltimore to secure the payment of an indebtedness therein mentioned. The mortgagee, on the 28th day of September, 1909, filed its petition alleging default on the part of the mortgagor in the performance of the covenants and conditions of the mortgage and asked that a decree be passed for the sale of the mortgaged property. Upon this petition, the Court, on the last named day, passed a decree appointing Linwood L. Clark, trustee, to make sale of the property mentioned in the mortgage.

The decree, among other things, required the trustee to give at least three weeks' notice, by advertisement inserted in some daily newspaper published in Baltimore City, of the time, place, manner and terms of sale, etc.

This property, decreed to be sold, located at 312 Roland avenue, is leasehold property and is subject to an annual ground rent of one hundred and twenty dollars, with the right to collect a sub-rent of forty-nine dollars *per annum.* It consists of a three-story brick dwelling house with a one-story office or show room adjoining, and a frame stable located upon the rear part of the property. The office or show room is described in the evidence as having "a very attractive

bow window, glass front and brick side walls," and was, at the time of the sale of the property, used as a plumber's shop. Both the dwelling and show room are numbered "312" on said avenue.

The trustee, on the 29th day of September, inserted in the Daily Record, a daily newspaper published in Baltimore City, an advertisement giving notice that he would sell the property mentioned in the decree·at public auction, on the premises, on October 21st, 1909, at four o'clock p. m. In which advertisement, after particularly describing the lot of land by metes and bounds, courses and distances, there was added thereto the following: "Ground rent $120. And im· proved by a three-story brick dwelling, known as No. 312 Roland avenue." In the advertisement, only the brick dwelling was mentioned, the show room and stable were not included among the improvements upon the property, because, as stated by the trustee, he had no information as to them, and not until the day of sale, when he went upon the premises, did he know that they existed; that he simply advertised the improvements as they appeared upon the records, and did not know of these improvements at all. The trustee further stated that not until after the first insertion of the advertisement did he know that any part of this property had been sub-leased. It was then that his attention was called to it and upon examination of the records he discovered that a portion of it had been sub-leased at and for an annual rental of forty-nine dollars. He thereupon modified or amended the advertisement so as to read thereafter, "Subject to an annual ground rent $120, with a right to collect a sub-rent of $49." This was practically the only modification or change made in the advertisement. The amended advertisement appeared thereafter in the issues of said paper of October 4th, 9th, 13th, 16th, 17th, 20th and 21st.

The trustee, on October 21st, the day the property was to be sold, visited it for the first time. When he reached there he first learned of the existence of the show room and stable,

and found that the card or advertisement of sale, that he had directed the auctioneer to post upon the property, had been placed in the window of the office or show room but no card or advertisement had been placed in the window of, or upon the dwelling house proper, and he, at that time, expressed fear and apprehension that the property had not been properly posted or advertised. It was four o'clock, the hour of sale, when he reached the premises where the sale was to be made and, as he expressed it, he could not see a soul except Mr. Caltrider and Mr. Chambers, who were at the time in the office talking; he did not know what they were talking about. "After a while they rang the bell and others came around." The property, however, was offered for sale, and the highest bid received therefor was seventeen hundred and twenty-five dollars, the bid of Mr. Chambers, and the property was struck off to him at that sum, and the trustee thereafter, in his report to the Court, returned Chambers as the purchaser of the property at said amount. As stated by the trustee, the sum owing on the mortgage, under which the property was sold, with costs of foreclosure proceedings amounted to about thirteen hundred dollars.

At the time of the sale of this property made by Clark, trustee, Caltrider was owing unto the James H. Robertson Manufacturing Company, on open account, a little over two thousand dollars, and on a mortgage, covering the property so sold, dated the 20th day of March, 1908, the sum of two thousand five hundred dollars.

It was to the ratification of the sale so made by Clark, trustee, unto Chambers, that the appellant company excepted. In the exceptions filed a number of reasons were assigned why the sale should not be ratified, but the reasons chiefly relied upon by the exceptant are: first, that the property was sold at a grossly inadequate price; second, that the property was not properly advertised.

The only evidence before this Court as to the value of the property sold, is the testimony of R. B. Tippett. of the firm

of R. B. Tippett & Bro., counsel for exceptant, and Oscar C. Martinet, a real estate agent of Baltimore City, which is offered by the exceptant.

Mr. Tippett testified that he had dealt extensively in real estate and was generally familiar with the value of property in the city, and that he had examined this property, 312 Roland avenue, and in his judgment it was fairly worth thirty-five hundred dollars or more, on the open market.

Mr. Martinet stated that he was in the real estate business; knew the property 312 Roland avenue, had examined it; that it consisted of a three-story brick dwelling with a three-story back building, with a one-story office or plumber's shop adjoining, having a very attractive bow window, glass front and brick side walls; and a frame stable on the rear of the property. He further stated that in his opinion the property is fairly worth on the market, subject to the ground rent of one hundred and twenty dollars, with a right to collect forty-nine dollars sub-rent, thirty-five hundred dollars, and that such a value was a conservative estimate. No evidence was offered in contradiction of this testimony. It is thus shown by this uncontradicted testimony that the property sold for less than one-half of the amount at which these witnesses placed its value.

The exceptant contends that the sale of this property was not properly advertised for the following reasons:

1st. That the advertisement, when first inserted in the Daily Record, made no reference to the right of the purchaser of the property to collect from the sub-tenant the annual rent of forty-nine dollars, to which the purchaser would be entitled, contending that this was a valuable right and would serve as an inducement to prospective purchasers. and therefore should have been mentioned in the advertisement.

2nd. That the advertisement confined the improvements thereon to the dwelling house, when it should have included the office and stable; contending that these additional im-

provements were of such character and importance as to serve as an inducement to prospective purchasers.

3rd. That in posting the shop or office, by placing in the window of the office a card announcing the property for sale, and not placing any such card in the window of, or upon the dwelling house proper, prospective purchasers were misled and confused.

This Court, in the case of *Glenn* v. *Clapp,* 11 G. & J. 8, said: "The Court will not set aside a sale in all other respects unexceptionable, for inadequacy of price, unless the sum reported by the trustee is so inadequate as to indicate a want of reasonable judgment and discretion in the trustee. But where any other just cause appears to doubt the propriety of the sale, it is very proper to be viewed in connection with it, that the sale has been also made at a reduced price."

In *Loeber* v. *Eckes,* 55 Md. 1, this Court, in referring to the rule as to inadequacy of price, again said: "This is the doctrine of all the Maryland authorities, but at the same time they all declare that where it appears that there is any other just cause to doubt the propriety of the sale, it is a consideration very proper to be viewed in connection with it, that the sale has been made at a reduced price. It is certainly true that the inadequacy of price is to be considered as a strong auxiliary argument in combination with circumstances calculated to cast doubt or suspicion upon the correctness of the sale."

In this case it is shown by the testimony produced on the part of the exceptant that the value of this property was more than double the amount at which the sale was made, and no effort was made to show that the valuation placed upon it by these witnesses, produced by the exceptant, was in excess of its true value. As was said in the case of *Hubbard* v. *Jarrell,* 23 Md. 83, if this objection stood alone upon the single fact of the sale largely under value, there would be a strong disposition to set it aside on this ground. In this case, however, there are other objections urged against

the validity of this sale that address themselves to the sound discretion of the Court and present other facts and circumstances involving the duty of the trustee which call for our equitable interposition, and therefore we do not think it necessary to base our conclusions solely upon the sufficiency of this objection. It was the duty of the trustee, in the sale of this property, to exercise the same degree of judgment and prudence that a careful owner would have exercised in the sale of his own property; and he was bound, for the protection of the interest of all the parties concerned, to bring the property into market in such manner as to obtain a fair market price therefor. *Hopper* v. *Hopper,* 79 Md. 402; *Carroll* v. *Hutton,* 88 Md. 689. Not being familiar with the property, he should have informed himself as to the improvements thereon, the rights belonging thereto, and such other facts in connection therewith as would have enabled him to advertise it properly and bring it into market in such manner as to obtain a fair market price therefor. This, he tells us, he failed to do.

A provident owner coming into possession of this property and not knowing the extent of the improvements thereon or the rights belonging thereto, would not have attempted to advertise it for sale without first having informed himself as to the character and extent of such improvements and the rights and advantages belonging thereto.

After a careful consideration of all the evidence in this case, we are forced to the conclusion that the trustee has not exercised that decree of care in offering the property that the law imposes upon him. This want of care and caution on the part of the trustee, is still more deeply impressed upon the Court by reason of admissions of the trustee himself. In his testimony, which was given in a very frank and candid manner, he stated that owing to the manner in which the property was advertised and from all the facts disclosed to him by the evidence in the case, he felt constrained to

say that the property ought to be resold, and that he could not say anything else and be honest.

Because of the inadequacy of price, considered in connection with the failure of the trustee to exercise that decree of care and caution incumbent upon him in relation to his duties as trustee, we are of the opinion that the Court below erred in refusing to set aside the sale. We therefore reverse the order of the Court below and remand the cause for further proceedings in accordance with the views herein expressed.

> *Order reversed and cause remanded, the costs to be paid out of the proceeds of the sale of the property mentioned in the proceedings.*