750 A.2d 618

**J. ASHLEY CORP.**

v.

**John S. BURSON.**

No. 0226 Sept. Term, 1999.

Court of Special Appeals of Maryland.

April 26, 2000.

Gary Greenwald (Law Offices of Howard L. Stern, on the brief), Camp Springs, for Appellant.

Garrett D. Green, Fairfax, for Appellees.

Argued before HOLLANDER, EYLER and THIEME, JJ.

HOLLANDER, Judge.

This dispute arises from exceptions filed by J. Ashley Corporation, appellant, to a trustees' foreclosure sale held on October 5, 1998. John S. Burson and William M. Savage, substitute trustees, are the appellees herein. Following a hearing, the Circuit Court for Prince George's County overruled appellant's exceptions. Thereafter, appellant noted this appeal and presents two questions for our consideration, which we have rephrased slightly:

I.  Did the trial court err in overruling appellant's exceptions to the foreclosure sale on the ground that the Trustees appeared late at the appointed place of sale and began the sale forty-five minutes after it was scheduled to occur?

II. Did the trial court err by overruling appellant's exceptions to the foreclosure sale on the grounds that the Trustee accepted a written bid to purchase the secured property from the foreclosing party, who did not appear at the sale?

For the reasons stated below, we shall affirm.

## FACTUAL SUMMARY [1]

A foreclosure sale of appellant's property, which was located in Temple Hills, was scheduled to occur at the courthouse in Upper Marlboro on October 5, 1998, at 1:58 p.m. At issue here is the manner in which the sale was ultimately conducted.

On November 23, 1998, appellant filed exceptions to the sale. In the exceptions, appellant contended that Tracy Plummer, an agent for Washington Mutual Bank, FA, "bid the property in for $125,000.00 as the noteholder," and was not

---

1.  Because the underlying facts that gave rise to the foreclosure sale are not at issue here, we need not recount them in our factual summary.

present "when the sale was knocked down." Appellant also alleged that the sale was scheduled to begin at 1:58 p.m., but neither the auctioneer nor the trustees appeared "until much later to start the auction." In support of its allegations, appellant submitted two affidavits. One was from Joseph L. Curtis, appellant's president, and the other was from Colease Dixon, "the holder of the second trust." Curtis averred that he was present at the auction at 1:58 p.m., but "neither the auctioneer nor the trustee appeared until much later into the next hour." He also claimed that Tracy Plummer "did not bid nor was present at the auction." Dixon's affidavit was almost identical to Curtis's affidavit with respect to the above-recited factual assertions.

In their answer to appellant's exceptions, appellees conceded that the Noteholder's agent submitted a written bid and was not present at the auction. They claimed, however, that it "was the only and highest bid." Moreover, appellees maintained that the trustees were present at the scheduled time of sale. Further, they asserted that the auctioneer, Ron West, was present "from the first of a series of sales commencing on or about 1:30 p.m.," and that the sale was held on time. In their affirmative defenses, appellees also contended that, even if appellant's allegations were true, appellant failed to allege harm or prejudice, and failed "to even speculate that prospective bidders appeared and left" because of the alleged delay. Appellees also asserted that "Nothing prohibits a lender at whose behest a Trustees' Sale is initiated from entering its one price written bid. There is no requirement that an agent of the lender . . . be physically present to enter into bid. At this sale there was no competitive bidding."

At the exceptions hearing held on February 26, 1999, appellant's counsel advised the court that the sale was scheduled to begin at 1:58 p.m., but the proceeding began at least forty-five minutes late. Further, appellant's attorney argued that it was improper for the trustees to accept a written bid from someone who was not present at the sale. Appellant's counsel argued: "[Y]ou cannot make bids in writing by people who are not present at the foreclosure sale."

Appellant's counsel elected to proceed by way of proffer, representing to the court that he had two witnesses who were prepared to testify as follows: 1) the two witnesses "were present for the sale at 1:58 p.m. The Trustees showed up late to the sale"; and 2) that "people showed up at 1:58 p.m. asking about the sale, and when the Trustee wasn't there, they left."

As to the issue of delay, the court responded:

That's not a basis, so I will concede that. I will assume what you say is right. If it had been heard before that, before people had time to show up, I would be seriously upset.

With respect to the written bid submitted by the agent of the noteholder, the court reasoned that the "noteholder can bid through the Trustee.... [T]he Trustee [can] wear two hats."

In response to appellant's argument, appellees noted that the written exceptions did not include the contention, made for the first time at the hearing, that prospective bidders were present at the auction and left after the 1:58 p.m. starting time because of the delay. Appellees' counsel also pointed out that "it's not claimed that the Trustee was not present."

After appellant's counsel affirmatively indicated that there were no other grounds for exceptions, the court overruled the exceptions.

## DISCUSSION

### A.

Appellant complains that the trial court erred in overruling the exception that was predicated on the ground that the proceeding was unduly delayed because it began forty-five minutes later than scheduled. Appellees counter that appellant's complaint comes at the "eleventh hour" and that, in any event, it does not constitute a basis to set aside the sale. We agree with appellees.

At the outset, we observe that appellant contended in its brief and at oral argument that it proceeded below by way of proffer and that the court accepted its proffer as true. Appel-

lees dispute that the court accepted counsel's assertions as part of the proffer. Upon our review of the record, we agree with appellees that the court did not indicate that it had accepted as true all of counsel's representations. As we noted, counsel for appellant advised the court that he had two witnesses who were available to testify. Yet he did not mention that the witnesses would testify to a delay of 45 minutes with respect to the start of the sale. Indeed, neither the written exceptions, the two affidavits appended to the written exceptions, nor the proffer itself referred to the sale occurring 45 minutes late. Instead, at the argument below, it was appellant's counsel who made that claim. With respect to the delay, appellant's counsel said only that the witnesses "were present for the sale at 1:58 p.m. The Trustees showed up late to the sale." He also proffered that people who were present for the sale left when it did not begin as scheduled. In response to the matter of the delay, the court said: "That's not a basis, so I will concede that. I will assume what you say is right."

Even if the length of the delay were accepted as part of the proffer, we perceive no error. We explain.

A foreclosure sale is governed by Md.Code (1974, 1996 Repl.Vol.1999 Supp.), § 7–105 of the Real Property Article ("R.P.") and the Maryland Rules. Maryland Rule 14–305(d) provides that if a party perceives an irregularity, it may file exceptions to the sale of property. The burden is not on the trustee to show that the sale was valid, however. Instead, the burden is upon the exceptant to show that the sale was invalid. *Ten Hills Co. v. Ten Hills Corp.*, 176 Md. 444, 449, 5 A.2d 830 (1939) (citation omitted); *PAS Realty, Inc. v. Rayne*, 46 Md.App. 445, 446, 418 A.2d 1222, *cert. denied*, 289 Md. 739 (1980).

To be 'sure, "[t]he trustee is bound to exercise the same degree of care, diligence and judgment in selling the property that a prudent person of ordinary business experience would exercise in selling his or her own property to the best advantage." *Pizza v. Walter*, 345 Md. 664, 681, 694 A.2d

93 (1997); *see James H. Robertson Mfg. Co. v. Chambers,* 113 Md. 232, 238, 77 A. 287 (1910). Thus, "[t]he trustee not only represents the holder of the note secured by the deed of trust, but also the owners of the property," who may be entitled to any surplus remaining after payment of the note and related expenses. *Waters v. Prettyman,* 165 Md. 70, 75, 166 A. 431 (1933).

■  Nevertheless, a " 'court will not set aside [a foreclosure] sale merely because it brings loss and hardship upon the mortgagor.' " *Hurlock Food Processors Inv. Assocs. v. Mercantile–Safe Deposit and Trust Co.,* 98 Md.App. 314, 347, 633 A.2d 438 (1993), *cert. denied,* 334 Md. 211, 638 A.2d 752 (1994) (*quoting Bachrach v. Washington United Coop.,* 181 Md. 315, 324, 29 A.2d 822 (1943)). In *Hurlock,* we said: " 'It is essential to the prompt administration of justice that the rule be inviolably observed that no court shall set aside a foreclosure sale merely because of harmless errors or irregularities . . . or for any slight or frivolous reasons not affecting the substantial rights of the parties.' " 98 Md.App. at 329, 633 A.2d 438 (quoting *Bachrach,* 181 Md. at 320, 29 A.2d 822).

■  When a sale is attacked, "it must be shown that the trustee did not abuse the discretion reposed in him, and that the sale was made under such circumstances as might be fairly calculated to bring the best obtainable price." *Waters,* 165 Md. at 75, 166 A. 431. The Court in *Waters* made clear that, in selling the property, a trustee must " 'act in a prudent and business-like manner, with a view to obtain as large a price as might, with due diligence and attention. . . .' " *Waters,* 165 Md. at 75–76, 166 A. 431 (quoting *Gould v. Chappell,* 42 Md. 466, 470 (1875)) (original emphasis in *Gould* omitted). If the sale is made with "haste and imprudence," or if the trustee fails to invite competition or adopts "an injudicious and disadvantageous mode of selling the property," the sale should not be ratified. *Gould,* 42 Md. at 470. In sum, the test is whether the trustee sold the property "under such conditions and terms as to advertisement and otherwise, as a prudent and careful man would employ, seeking to obtain the best

price for his own property[.]" *Waters*, 165 Md. at 74, 166 A. 431 (citations omitted); *see PAS Realty*, 46 Md.App. at 448, 418 A.2d 1222.

The case of *Ten Hills Co. v. Ten Hills Corp.*, 176 Md. 444, 5 A.2d 830 (1939), is instructive. There, the mortgagor excepted, *inter alia*, on the grounds that the sale price was grossly insufficient and the sale was inadequately advertised. But, the mortgagor did not identify anyone who would have paid more for the property than the price reported by the trustee, and offered no evidence that the property was worth more than that price. *Id.* at 449, 5 A.2d 830. The Court upheld the sale, concluding that "any resale would be an idle experiment without promise of benefit to the mortgagor or the mortgagee." *Id.* at 455, 5 A.2d 830. It reasoned that, "[i]n the absence of any showing of prejudice," the Court will not "interfere with a sale fairly made because of trivial discrepancies or inconsequential errors." *Id.* at 449, 5 A.2d 830. Thus, it said that " 'non-prejudicial inaccuracies or irregularities in the notice or conduct of a sale . . . will not vitiate a sale.' " *Id.* at 451, 5 A.2d 830 (citations omitted). Moreover, a sale will not be set aside on the basis of "mere inadequacy of price," *Ten Hills*, 176 Md. at 449, 5 A.2d 830, unless the price is "so glaring and palpable as to indicate fraud or unfairness, or suggest that the trustee lacked the judgment and skill necessary to any adequate administration of the duties of his office." *Id.*

*Ruby v. Bowlus*, 217 Md. 115, 140 A.2d 513, *cert. denied*, 358 U.S. 856, 79 S.Ct. 90, 3 L.Ed.2d 90 (1958), is also noteworthy. In that case, the appellant, a Seventh Day Adventist, complained about a sale held on a Saturday, because persons of that faith are not permitted to engage in secular activities on Saturday. *Id.* at 121, 140 A.2d 513. The Court found, however, that there was no showing that a prospective bidder was actually prevented from bidding by reason of the day of the sale. Nor was there any showing that the appellant even asked the trustee to change the day of sale. Because the appellant could not demonstrate any "actual prejudice or any

effort to change the day of the sale," the Court concluded that his complaint lacked merit. *Id.* at 122, 140 A.2d 513.

*Wilson v. Cory*, 228 Md. 561, 180 A.2d 695 (1962), also provides guidance. There, the mortgagors-appellants complained that a sale was conducted as to "encourage inadequacy of price, confuse prospective bidders, suppress competition, and stifle or chill the bidding." *Id.* at 563, 180 A.2d 695. These contentions were based on the fact that the highest bidder had been discourteously treated by the auctioneer, who was attempting to qualify another bidder for sale of the property. The property was sold to the other bidder for $33,000.00, but the exceptant testified that she and her husband were prepared to pay $40,000.00 to acquire the property. *Id.* at 563–64, 180 A.2d 695. Even in view of these irregularities, the Court acknowledged that there was no evidence to show that prospective bidders were prevented from bidding. *Id.* at 565, 180 A.2d 695. In addition, there was no evidence that the auctioneer received or refused to accept any bid higher than $33,000.00. Therefore, the Court held that the alleged stifling of the bidding was not sufficiently demonstrated. *Id.* at 565, 180 A.2d 695.

In its brief, appellant cites *Preske v. Carroll*, 178 Md. 543, 16 A.2d 291 (1940), for the proposition that a foreclosure sale held at a time other than the appointed time should not be upheld. The Court said: "It is an elementary principle of law that a foreclosure sale should be held at the time and place mentioned in the notice of sale, and any sale held at a time other than that appointed should not be confirmed by the court." *Id.* at 548, 16 A.2d 291 (citation omitted). *Preske* is factually inapposite, however, because it involved an allegation that the sale of property occurred *before* the advertised time, not *after* the scheduled time. *See also Silver Spring Dev. Corp. v. Guertler*, 257 Md. 291, 295–96, 262 A.2d 749 (1970)(rejecting an exception to a foreclosure sale based on a claim that the sale began at 9:34 a.m. instead of 9:30 a.m.). Nevertheless, it is significant that the *Preske* Court made clear that "no exceptant to a sale is entitled to obtain the aid of [a] court . . . unless he offers to pay a higher price for the property, or at

least gives assurance that some other person would be likely to do so, even though there may be some irregularity in the conduct of the sale." *Preske,* 178 Md. at 550, 16 A.2d 291. As no such assurance was provided, the Court upheld the sale.

■ In applying the principles gleaned from the above cases, we are satisfied that the court did not err. Even assuming that the sale began 45 minutes late, the length of delay, under the circumstances, does not amount to the kind of irregularity that warranted an order setting aside the foreclosure sale. Moreover, appellant failed to show any harm or prejudice from the delay. Although appellant proffered that there were "people" present at the sale who left because the sale did not begin on time, that vague contention was not enough to establish harm or prejudice. Appellant did not present any particular or specific information showing that the "people" were prepared to bid on the property, or that they would have bid more than the amount for which the property was ultimately sold. In view of the conspicuous absence of even the slightest evidence of actual prejudice, we shall uphold the trial court's determination that appellant's exception, based on the assertion that the sale did not proceed at the scheduled time, lacked merit.

## B.

■ Appellant contends that the trustees acted improperly by treating the noteholder differently and accepting a written bid when other prospective bidders had to be present at the time of the foreclosure sale. In so doing, appellant asserts that the trustees "affirmatively acted in the place of the noteholder." Appellant's complaint that the trial court erred in overruling its exception on the ground that the trustees accepted a written bid from a noteholder who was not present when the sale was "knocked down" is equally unavailing.

■ A mortgagee is "permitted to bid as freely and as fully as any other person desiring to purchase the property . . . ." *Heighe v. Evans,* 164 Md. 259, 270, 164 A. 671 (1933); *see Hurlock,* 98 Md.App. at 329, 633 A.2d 438. R.P. § 7–

105(e), entitled "Secured party may purchase at sale," provides: "No title to property acquired at sale of property subject to a mortgage or deed of trust is invalid by reason of the fact that the property was purchased by the secured party, his assignee, or representative, or for his account." Nevertheless, such transactions "will be scrutinized with the utmost care, and will be avoided upon slight evidence of ... unfairness...." *Heighe,* 164 Md. at 270, 164 A. 671; *see Hurlock,* 98 Md.App. at 329, 633 A.2d 438. Consequently, "[w]hen the purchaser at the foreclosure sale is the mortgagee or his assignee, the Courts will examine the sale closely to determine whether or not it was bona fide and proper .... [and] will set aside such a sale upon 'slight evidence of partiality, unfairness or a want of the strictest good faith.' " *Southern Maryland Oil, Inc. v. Kaminetz,* 260 Md. 443, 450, 272 A.2d 641 (1971) (citing *Heighe,* 164 Md. at 270, 164 A. 671).

In *PAS Realty,* 46 Md.App. at 450–52, 418 A.2d 1222 we upheld the mortgagee's purchase at a foreclosure sale because of the lack of evidence that the sale was improperly advertised or conducted. We acknowledged, however, that although a secured party is not barred from purchasing at a foreclosure sale, the courts " 'should exercise a greater degree of caution in passing upon the ratification' " of such a sale. *Id.* at 446, 418 A.2d 1222 (quoting *Walton v. Washington County Hospital Ass'n,* 178 Md. 446, 451, 13 A.2d 627 (1940)); *see Silver Spring Dev. Corp. v. Guertler, supra,* 257 Md. 291, 298, 262 A.2d 749 (concluding that "[a]ny person is qualified to purchase at a foreclosure as long as it does not interfere with any duty he has to perform with respect to the foreclosure."); *Hurlock Food Processors, supra,* 98 Md.App. 314, 333, 633 A.2d 438 (concluding that a secured party is entitled to bid).

Because there is no blanket restriction in Maryland that bars a trustee from accepting a written bid on behalf of a lender, the court was required to consider the proffer to determine whether it showed a lack of good faith or was otherwise unfair. No such evidence was proffered. The trustees did not bid on their own behalf, nor did they receive personal benefit from the sale of the property. In addition,

the trustees did not act in place of the noteholder, but merely accepted its written offer to purchase the property. Moreover, no other party placed a bid, written or otherwise, at the sale. Further, appellant presented no evidence that any potential bidder was discouraged from doing so, or that the trustees disregarded a bid from a bidder who was in fact present when the sale "knocked down." Therefore, we cannot say that the trial court erred in overruling the second exception.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**