REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 0108

September Term, 2014

---

CHRISTINE FISHER A/K/A
CHRISTINE CERMAK

v.

CARRIE M. WARD, et al., TRUSTEES

---

Eyler, Deborah S.
Leahy,
Sharer, J. Frederick,
        (Retired, Specially Assigned),

JJ.

---

Opinion by Sharer, J.

---

Filed:  December 1, 2015

Timothy E. Meredith, J., did not participate in the
Court's decision to report this opinion pursuant to
Md. Rule 8-605.1.

In this appeal we are presented with the question of whether a trustee, appointed as the person authorized to make a sale in an action to foreclose a mortgage or deed of trust, must be physically present at the place and time of sale. Resolution of that question will lead us to resolve whether: (1) if the trustee must be present, but is not, the sale must be set aside as a matter of law; or (2) in a sale conducted without the physical presence of a trustee, the property owner must show prejudice in order to be entitled to relief.

Appellees, Carrie M. Ward, Jacob Geesing, and Howard N. Bierman, substitute trustees ("Trustees") for the note holder on a deed of trust, initiated this action, in the Circuit Court for Worcester County, to foreclose on residential real estate owned by appellant, Christine L. Fisher.

The sale occurred on January 14, 2014, at which time it was sold to the note-holder, the highest - and only - bidder. Fisher, acting *pro se*, filed exceptions to the Trustees' report of sale, maintaining that the sale was unlawful because none of the Trustees were physically present at the sale. The circuit court denied the exceptions and ratified the sale.

Fisher's timely appeal presents the following question, which we have rephrased:

Where it is undisputed that no person authorized to make the sale was physically present at the place and time of the sale, did the circuit court err in ratifying the sale?

For the reasons more fully set out below, we shall affirm the judgment of the circuit court.

## FACTUAL and PROCEDURAL BACKGROUND

It is not disputed that Fisher, the fee owner of a residential property located in Bishopville, Worcester County, fell into default on her mortgage payments to the lender,

Federal National Mortgage Association (Fannie Mae). The lender designated substitute trustees, named above, and, upon the filing of foreclosure proceedings, in September, 2013, the court signed appropriate orders designating Trustees as the persons authorized to make the sale. Pursuant to the residential property foreclosure procedure set forth in Md. Code Ann. (2010), Real Property ("RP") § 7-105.1, the Trustees notified Fisher by first-class and certified mail of the time and place of the sale - January 14, 2014 - as well as the terms of the sale. In accord with Md. Rule 14-210, advertisements of the scheduled sale were placed in a local newspaper on three separate dates. Fisher puts forward no challenge to the Trustees' compliance with required pre-sale procedures.

The foreclosure sale was conducted on the advertised date at the Worcester County Courthouse in Snow Hill. David Simpson, an attorney, was retained by the Trustees to serve as auctioneer who, at the advertised time, called the sale. As a result of inclement weather the sale was conducted inside the front doors of the courthouse, rather than outdoors.

Present at the sale, in addition to the auctioneer, were Fisher, her son William, her friend Charles Damnann, and Craig Horseman, the family attorney. None of the Trustees were present. According to Fisher's affidavit, her father, William Cermak, had arranged to have Horseman bid in his behalf - a bid she described as "substantially higher than the fair market value." For reasons not revealed by the record, no such bid was received, and there is no indication how much Cermak was prepared to bid.

At the time the auction opened, Simpson was engaged in a cell phone conversation with Bierman, one of the Trustees. In his later affidavit, Bierman asserted that he was ready

2

and available to answer any and all questions related to the proceedings and the sale, but none were posed by anyone present at the sale. Simpson announced that the opening bid was $308,000, which Bierman offered, via telephone, on behalf of Fannie Mae. No other bids were received. Fisher concedes that $308,000 was more than the fair market value of the property.

Trustees filed a timely report of sale, an affidavit of fairness of sale, and truth of report. The report included the statement that "the said Substitute Trustee did then and there at the courthouse on January 14, 2014, direct and supervise the auction sale of the property secured by said Deed of Trust][.]"

Subsequently, Fisher, *pro se*, filed exceptions to the report of sale, pursuant to RP § 7-105, requesting that the court not ratify or confirm the sale. She argued that because Maryland law requires that "at least one of the individuals authorized to sell the property be present and act as the seller thereof[]" the foreclosure sale was unlawful because no Trustees were physically present at the sale.

In their opposition to Fisher's exceptions to the report of sale, Trustees contended that constructive presence of a trustee is sufficient, and that Bierman's participation by telephone with the auctioneer throughout the sale constituted constructive presence, thus satisfying the "presence" requirement. Further, the Trustees asserted that Fisher did not allege prejudice as a result of the purported irregularity and, in fact, suffered no prejudice.

3

In a further response to the circuit court, Fisher argued that the report of sale was defective because it was based on Bierman's misrepresentation that he was "then and there at the courthouse" where he "direct[ed] and supervise[d] the auction sale[.]"

As we have noted, the circuit court dismissed Fisher's exceptions and ratified the sale. Fisher's motion for reconsideration was likewise denied.

## DISCUSSION

### Standard of Review

Fisher suggests that the question presented is one of law and is subject to our de novo review. The Trustees posit that the case presents a mixed question of law and fact. They suggest that the question of law - presence of a trustee at the time and place of sale - is subject to de novo review, while the court's findings of fact - potential prejudice to Fisher - should be affirmed unless clearly erroneous. As we noted at the outset, we must first determine whether a trustee must personally attend the sale to avoid a fatal irregularity, and then we must address the question of potential prejudice to the property owner.

The power of sale in a deed of trust must be exercised by one authorized to do so, either by the deed of trust or appointment by the court. RP § 7-105(b). The standard of review established by this Court provides:

> In reviewing a court's ratification of a foreclosure sale, we disturb the circuit court's findings of fact only when they are clearly erroneous. In reviewing the circuit court's findings of fact, we are mindful that the exceptant to a foreclosure sale bears the burden of proving that the sale was invalid. The exceptant must also demonstrate that any irregularities caused "actual prejudice." ...
> We review the court's legal determinations de novo.

4

*Fagnani v. Fisher*, 190 Md. App. 463, 470-71 (2010) (citations omitted), *aff'd*, 418 Md. 371 (2011) (citing *Jones v. Rosenberg*, 178 Md. App. 54, 68-69 (2008); *J. Ashley Corp. v. Burson*, 131 Md. App. 576, 582 (2000); *Ten Hills Co. v. Ten Hills Corp.*, 176 Md. 444, 449 (1939)).

The party seeking to have a sale vacated bears the burden of proof, and the law presumes that the trustee properly discharged his duties regarding the sale. *Bachrach v. Washington United Cooperative, Inc.*, 181 Md. 315, 320-21 (1943). "We conduct our review on the basis of the evidence introduced into the record, and not on the basis of either the statements of counsel as to what occurred in other cases, or proffers not accepted by the court as evidence." *Fagnani*. 190 Md. App. at 470-71 (citations omitted). The Court of Appeals has held that "no court shall set aside a foreclosure sale merely because of harmless errors or irregularities committed in connection with the exercise of the power of sale, or for any slight or frivolous reasons not affecting the substantial rights of the parties." *Bachrach v. Washington United Cooperative, Inc.*, 181 Md. 315, 320 (1943).

Fisher argues that the foreclosure sale of her property "was defective and should be set aside because Maryland law requires that at least one person with authority to sell the subject property be present at the foreclosure sale." In addition, given that no trustee was physically present, she contends that Bierman's filing that he was "then and there at the courthouse" directing and supervising the sale was false and, is thus an irregularity requiring that the sale be set aside.

5

Trustees maintain that Maryland law imposes no legal requirement that a trustee be physically present at a foreclosure sale, and it has long been established that constructive presence is sufficient. Based on the record, they argue, Bierman fairly and properly supervised the sale by maintaining constant telephone communication with the auctioneer. In addition, Trustees argue, even assuming an irregularity, there was no prejudice to Fisher because the successful bid for the property was admittedly higher than the amount she expected the sale to bring.

Trustees call our attention to *Hopper v. Hopper*, 79 Md. 400 (1894). The parties presented several issues to the Court in *Hopper*, the least significant of which was the requirement of the trustee's attendance at the sale. The Court simply blessed the conduct of the sale by a co-trustee.

> But then it is said that Mr. Marine, one of the trustees, was not present at the sale. This is true, but that was his fault. It was his duty to have been present [but] ... the mere fact that the sale was in his absence, conducted by his co-trustee is no ground in itself to justify the court to set aside the sale.

*Hopper*, at 404.

We take from *Hopper* a duty on the part of the trustee (or at least one in the case of co-trustees) to attend the sale. *Hopper* is cited as requiring the presence of the trustee. *See* Gordon on Maryland Foreclosures § 20.4 (4th Edition, 2004). Similarly, the validity of a sale conducted by a co-trustee was confirmed in *Silver Spring Dev. Corp. V. Guertler*, 257 Md. 291 (1970).

Maryland Code, Real Property, Title 7, is silent as to the obligation of a trustee to physically attend the sale. Nor does Md. Rule, Title 14, speak to attendance of the trustee

6

at sale. Left with the silence of the statute and the ancient authority of *Hopper*, we conclude that attendance at the place and time of sale is an obligation of a trustee. But, will some form of constructive presence suffice?

## Constructive Presence

Trustees assert that Bierman's constructive presence saves the proceedings from a fatal flaw, relying on *Wicks v. Westcott*, 59 Md. 270 (1883), in which the trustee was not physically present at the sale. The Court opined:

> The rule is certainly well established, that a trust committed to the judgment and discretion of one person cannot by him be delegated to another. It having been proved that this trustee was not personally present at the sale, but was acting through agents or attorneys, it is insisted that the power was not well executed, and that there was no sale to which an order of ratification by the court could give validity. We do not regard that question as involved upon the facts. In *Hubbard v. Jarrell*, 23 Md. 66 [(1865)), this [C]ourt decided that a trustee who was present could act through an attorney or agent. We cannot say that this trustee, who, though not actually at the sale when it was made, was in town, near at hand and readily accessible if needed for any purpose, may not be regarded as constructively present. But as a circumstance with others of which the exceptant had a right to complain, it may be considered.

*Id*. at 279.

The Court noted further that "[t]his [C]ourt, in *Walker v. Tims*, 39 Md. [(1873)], (unreported), decided that the personal absence of the trustee from the sale, and making it through another, was a fact which threw discredit on the sale, and with other facts, in justice required a new sale to be ordered." *Id*.

We discern from *Wicks* that the concept of constructive presence of the trustee is at least condoned, if not actually permitted. The more salient conclusion to be drawn from

7

*Wicks* is that absence of the trustee from the sale is merely a circumstance to be considered by the court in its ultimate determination of fairness of the proceedings. *Accord*, *U.S. v. Eastern Woodworks, Inc.* 151 F.Supp. 95 (1957). That is, is the absence of a trustee merely an irregularity or harmless error not affecting the substantial rights of the parties? *See*, *Bachrach*, 181 Md. at 320.

Having recognized that *Wicks* condoned what the court referred to as constructive presence when the trustee, not in physical attendance, was "in town, near at hand and readily accessible," the question then becomes what degree of availability is required to constitute a constructive presence. *Wicks* was decided at a time when electronic communication was in its bare infancy. Thus, the court deemed being "in town, near at hand and readily accessible" as sufficient. Would the Court today consider being "in town ..." sufficient if the town was a large city, and absent modern telecommunications. Query: If "near at hand" is sufficient to satisfy a presence requirement, as in Wicks, would electronic nearness suffice in today's world of instant communication?

We are left then, as appellate courts often are, with a consideration of the circumstances. In other words, what is sufficient to constitute constructive presence will depend on the facts before the court.

The sale in these proceedings was brief and uncluttered. All parties in interest were present, but only one bid was received by the auctioneer. There were no competing bids and no questions to the auctioneer, nor were any objections voiced by anyone in attendance. It is not disputed that, throughout the sale, Bierman was in communication contact with the

auctioneer via cell phone. Any problems or concerns could have easily been addressed, if necessary. We deem that, on this record, the trustee was "readily accessible" as defined by *Wicks*.

When determining the adequacy of a trustee's foreclosure sale, the well-settled test is whether the property was "sold under such conditions and terms as to advertisement and otherwise, as a prudent and careful man would employ, seeking to obtain the best price for his own property." *Waters v. Prettyman*, 165 Md. 70, 74 (1933) (citing *Hubbard v. Jarrell*, 23 Md. 66 (1865)). *Accord*, Gordon on Maryland Foreclosures, § 20.5 (4th Edition, 2004). We are satisfied that that standard has been met in the case before us.

**Prejudice**

The ratification of a foreclosure sale is presumed to be valid. *Fagnani v. Fisher*, 418 Md. 371, 384 (2011) (citing *Webster v. Archer*, 176 Md. 245 (1939)). Thus, the burden is on the excepting party to show that the sale was invalid and to show further that the claimed irregularities caused prejudice. *Id*. "[I]f a mortgagee or his assignee complies with the terms of the power of sale ... and conducts the foreclosure sale properly, the court will not set aside the sale merely because it brings loss and hardship upon the mortgagor." *Id*. Moreover, trustees have "discretion to outline the manner and terms of the sale, provided their actions are consistent with the deed of trust and the goal of securing the best obtainable price[]" and

> Unless the precise method of sale is prescribed by the contract or decree, some discretion is necessarily granted to the trustee, ... making the sale, as to the manner in which the property will be offered. That discretion will naturally be affected by the character and location of the property and other

9

circumstances peculiar to the case, so that it is impossible to lay down a hard and fast rule....

418 Md. at 385 (citation omitted).

There is a heightened standard in the case of property "bought in" by the note holder. "When the purchaser ... is the mortgagee or his assignee, the Courts will examine the sale closely to determine whether or not the sale was bona fide and proper. The Courts will set aside such a sale upon 'slight evidence of partiality, unfairness, or want of the strictest good faith.'" *Id*. at 395. Despite the heightened standard, the burden continues to be borne by the excepting party to show both invalidity and resulting prejudice. *Id*.

As to potential prejudice to Fisher, we recall that her exceptions to the report of sale asserted none; and our review of the record reveals none. Fisher's argument is based solely on the absentee participation of Trustees in the sale itself. She raises no assertions of irregularity in regard to any other aspect of the proceedings. Nor does she challenge the sufficiency of the price brought by the sale. Applying *Wicks*, we conclude that the absence of Trustees is but a factor to be considered in determining the fairness and validity of the sale. Absent other irregular factors, we conclude that, although required, Bierman's "presence" at the sale by telephone did not create unfairness or prejudice to Fisher to warrant reversal of the judgment of the circuit court.

**JUDGMENT OF THE CIRCUIT COURT FOR WORCESTER COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 0108

September Term, 2014

_____

CHRISTINE FISHER A/K/A
CHRISTINE CERMAK

v.

CARRIE M. WARD, et al., TRUSTEES

_____

Eyler, Deborah S.,
Leahy,
Sharer, J. Frederick,
        (Retired, Specially Assigned),

JJ.

_____

Concurring Opinion by Leahy, J.

_____

Filed: December 1, 2015

Leahy, J., concurring.

Respectfully, I concur. I join in the judgment, but write separately to express my concern that the rule proposed by the majority is an unnecessary departure from the common law that would allow constructive presence to become the default practice of trustees at foreclosure sales. I would make explicit that the failure of a trustee (or an empowered and properly supervised delegate) to physically attend the sale remains an irregularity in the sale, which, should it result in actual prejudice, would be fatal to the sale. As the majority states, neither statute nor rule require the physical presence of a trustee at the sale of real property; however, both case law and decades of common practice reflect the requirement that a trustee be physically present at the sale. To conclude that constructive presence is permitted raises too many questions. If constructive presence via telephone is permitted, would it be sufficient for a trustee to be available to answer questions via text message or to simply be available to take a phone call if necessary? I submit that it would not.

The majority acknowledges, citing *Hopper v. Hopper*, 79 Md. 400 (1894), that the "attendance at the place and time of sale is an obligation of a trustee." Maj. Op. at ___. But then the majority looks to *Wicks v. Westcott*, 59 Md. 270, 279 (1883) for the proposition that "the concept of constructive presence of the trustee is at least condoned, if not actually permitted." Maj. Op. at ___. The Court in *Wicks* set aside the challenged ratification and sale of real property in that case based on the trustee's failure to provide accurate information regarding certain encumbrances which resulted in the "exceptant and other bidders [] bidding

in the dark, and in such uncertainty, that they could not intelligently bid for the property."

*Wicks*, 59 Md. at 274. Regarding the presence of the trustee at the sale, the Court noted,

however, that despite the fact that "[n]o special exception was taken . . . on that score, [and]

the rule . . . ha[d] no application" that the failure of a trustee to attend the sale is, generally,

"a circumstance with others of which the exceptant ha[s] a right to complain, [and] it may

be considered." *Id.* at 279. It was in this context that the Court opined, in dicta, that it could

not say that the trustee "near at hand and readily accessible if needed for any purpose may

not be regarded as constructively present." *Id.*

Notwithstanding its introduction of the concept of constructive presence, the Court

in *Wicks* did not retreat from the principle that "the personal absence of the trustee from the

sale, and making it through another, was a fact which threw discredit on the sale." *Id.* The

requirement that a trustee be present to guide and facilitate a sale at auction has been widely

recognized across jurisdictions. In his treatise on trusts and trustees, George G. Bogert

stated:

> It is easy to see that a trustee should be allowed to delegate to a
> subordinate the posting of a notice of a sale, or to an attorney the negotiation
> of terms which the trustee had decided upon. The performance of such acts
> does not entail the making of vital decisions. . . .
> Yet it is a far different thing to delegate to an agent . . . the power to
> decide whether or not to sell and at what price and upon what terms. . . . Thus
> if the sale is by public auction the trustee must be present throughout the sale,
> ready to guide and control the proceedings, although he can employ an
> auctioneer to do the actual calling of the property.

2

Bogert, The Law of Trusts and Trustees § 556 (2d ed. rev. 1980).  Retreating from this earlier (more harsh) standard, the modern rule under the Uniform Trust Code establishes that a trustee may "delegate [its duties] with reasonable care, [but] must establish the scope and terms of the delegation, and must monitor the delegate's exercise of the delegated powers." Bogert, The Law of Trusts and Trustees § 556 (2d ed. rev. 1980, 2015 Supp.).

Maryland adopted a version of the Uniform Trust Code in 2014 that provides for such delegation.  2014 Md. Laws, ch. 585 (HB 83) (codifed at Maryland Code (1974, 2011 Repl. Vol., 2015 Supp.), Estates and Trusts Article ("ET") § 14.5-101 *et seq.*).  Section 14.5-807 allows for such a specifically defined and monitored delegation and provides that the delegate then "owes a duty to the trust."   No such delegation appears to have taken place in the present case.

Notwithstanding the potential for delegation, the failure of a trustee or a duly empowered agent to physically attend the sale is "a circumstance with others of which the exceptant ha[s] a right to complain" and "a fact which thr[ows] discredit on the sale." *See Wicks,* 59 Md. at 279.  It is not sufficient that an auctioneer be hired for the limited purpose of calling the property for sale, while the individual empowered to conduct the sale of the property is absent, or even, "constructively present."  Indeed, in *Hopper*, the Court of Appeals recognized that "[i]t was the duty of the trustees, of course, to offer the property in such a manner as to bring its fair market value, and to exercise the same judgment and prudence that a careful owner would exercise in the sale of his own property."  79 Md. at

3

400. Thus, "[i]t was [the trustee's] duty to have been present" at the sale. The failure of one trustee, however, was not fatal to the sale in that case where it was conducted and supervised by a co-trustee; showing that "the sale was fairly conducted." *Id.* The case law compels the conclusion that the presence of a trustee, or other duly empowered agent, is required to ensure that the sale is fairly conducted for the benefit of both the seller and the bidders.

The conveniences of modern times, such as the ability to be "constructively present" via cell phone, are great innovations that serve many good purposes. But, I believe we should be restrained to employ such innovations to reconstruct important protections unnecessarily. In my view, it is unnecessary to change the common law to allow trustees to be constructively present at the public sale, especially in light of Maryland's adoption of ET § 14.5-807. Currently, the failure of a trustee (or an empowered and properly supervised delegate) to physically attend the sale is an irregularity in the sale. Such an irregularity, should it result in actual prejudice to the exceptant, may be fatal to the sale. *Cf. Ten Hills Co. v. Ten Hills Corp.*, 176 Md. 444, 449-50 (1939); *Fagani v. Fisher*, 190 Md. App. 463, 470-71 (2011). Rather than first conducting a factual analysis to determine whether the level of constructive presence is sufficient--realizing that constructive presence arguments might be made when a trustee is right next door or available via telephone or skype from Beijing, China--I would treat such an irregularity in the same manner as another serious irregularity in a public sale by a trustee. I would conclude that the party excepting to the sale had met its burden to demonstrate the presence of an irregularity in the sale, and, only thereafter, look

4

to the circumstances surrounding the sale to determine whether the error resulted in actual prejudice. *See Fagnani*, 418 Md. 371, 383 (2011). A "constructive presence" analysis should only be pertinent to determining whether the exceptant was prejudiced. Although the trustee was available by phone and was not physically present at the foreclosure sale in this case, I join in the judgment because the exceptant did not demonstrate "actual prejudice."